UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL A. DEEM,

                Plaintiff,

   -against-

CHARLENE INDELICATO, individually,
LORI ALESIO, individually, HILLARY
RAIMONDI, individually, CAROL
ARCURI, individually, and the COUNTY
OF WESTCHESTER, New York,

                Defendants.
-----------------------------------------------------------x

**09 CIV. 1842**

**COMPLAINT**   **JUDGE ROBINSON**



**Jury Trial Demanded**

FILED
FEB 27 2009
USDC WP SDNY

      Plaintiff MICHAEL DEEM, by his attorney Jonathan Lovett, for his complaint respectfully states:

### NATURE OF THE ACTION

      1. This is an action for compensatory, punitive, and liquidated damages, proximately resulting from conduct jointly engaged in by Defendants under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed him by the Uniform Services Employment and Reemployment Act (hereinafter "USERRA"), 38 U.S.C. §4301 *et. seq*, Title VII, 42 U.S.C. §2000e *et. seq*, and 42 U.S.C. §1983.

### JURISDICTION

      2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. With respect to Plaintiff's Title VII claim on October 20, 2006, he duly filed a Charge of Discrimination based upon gender with the United States Equal Employment Opportunity

1

Commission (Charge No. 520-2007-00341). On December 4, 2008, the United States Department of Justice duly issued to Plaintiff a Notice of Right to Sue. As to Plaintiff's state law claim, it is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367.

## THE PARTIES

3. Plaintiff MICHAEL A. DEEM is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint, commencing in August of 2000, he was employed by the County of Westchester as an Assistant County Attorney. For in excess of twenty years he served in the United States Marine Corps, in both an active and reserve status. In that capacity he attained the rank of Lieutenant Colonel, held a Top Secret/Special Compartmentalized Information security clearance, and received an Honorable Discharge.

4. Defendant CHARLENE INDELICATO (hereinafter "Indelicato"), who is sued in her individual and personal capacities only, since February 1, 2001, has served as the County Attorney for the Defendant County. During her tenure as such, by reason of her final discretionary decision-making authority, she has established and implemented systemic and continuing gender-discriminatory policies and practices by reason of which male attorneys are routinely: i) intentionally subjected to a gender-hostile work environment; ii) intentionally denied promotional opportunities made available to lesser qualified female attorneys; iii) intentionally assigned to demeaning and/or inconsequential legal matters in contrast to their lesser qualified female counterparts' assignments; iv) deliberately denied equality of pay with respect to lesser qualified

female counterparts; v) deliberately subjected to public, degrading reprimands premised upon false allegations of wrong-doing; vi) forced, through calculated work overload and/or assignment to demeaning work assignments, not imposed on their lesser qualified female counterparts, to resign from the employ of the County; and vii) otherwise denied equal terms and conditions of employment by reason of their gender.

5. Defendant LORI ALESIO (hereinafter "Alesio"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was a Deputy County Attorney for the Defendant County. She has actively implemented, with respect to both Plaintiff and other male attorneys in the County Attorney's Office, the gender discriminatory practices and policies established by Indelicato.

6. Defendant HILLARY RAIMONDI (hereinafter "Raimondi"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was an Associate County Attorney for the Defendant County. She too has actively implemented, with respect to both Plaintiff and other male attorneys in the County Attorney's Office, the gender discriminatory practices and policies established by Indelicato.

7. Defendant CAROL ARCURI (hereinafter "Arcuri"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was an Associate County Attorney for the Defendant County. She, like Alesio and Raimondi, has actively implemented, with respect to both Plaintiff and other male attorneys in the County Attorney's Office, the gender discriminatory practices and policies established by Indelicato.

8. Defendant COUNTY OF WESTCHESTER (hereinafter "County") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

*Plaintiff's Military Status*

9. On February 15, 2001, at a meeting of the Family Court Bureau, Indelicato remarked to all present, including Plaintiff:

> "We are taking a look at how we hire people. Why hire someone when you know it will cost you more money than hiring someone else".

The comment was directed at Plaintiff and intended as a criticism of his military service obligations which required his absence from the workplace for extended periods of time.

10. On April 4, 2001, Indelicato demanded Plaintiff's resignation within two days, advising him that absent the resignation she would fire him. In making that demand and threat Indelicato intended to retaliate against Plaintiff by reason of his military service obligations - - about which she complained as indicated in the preceding paragraph "9".

11. Indelicato's demand/threat as referenced *supra* was overruled by the then male Deputy Westchester County Executive - - to whom Plaintiff in detail reported the systemic and pervasive gender-based hostile work environment in the County Attorney's Office - - a circumstance that resulted in Indelicato's personal animus towards Plaintiff increasing geometrically.

12. In April of 2002, prior to Plaintiff's commencement of a two week, obligatory military leave of absence, Indelicato asked him: "Why are you still in the reserves?". When Plaintiff responded that he was "still an infantry man at heart", Indelicato responded disparagingly: "You're a lawyer now!".

13. On December 11, 2003, following another two week obligatory leave of absence by Plaintiff for military duty, Alesio ordered that Plaintiff's accrued leave balances be reduced once his paid military leave was exhausted - - a deliberate violation of Plaintiff's rights under USERRA.

14. From January 20, 2004, to January 19, 2005, Plaintiff was ordered to active, military duty with the United States Marine Corps in support of and participation in the Global War on Terrorism. From January 20, 2005, through April 4, 2005, Plaintiff availed himself of seventy-five days of "transitional leave" provided for by USERRA and the New York State Military Law. Upon his return to work and on April 5, 2005, Alesio inquired of him as to whether that leave of absence was "voluntary". When Plaintiff responded in the affirmative, Alesio ordered him to sign a request for "leave without pay", a deliberate violation of USERRA which *inter alia* deprived Plaintiff of seniority and retirement contributions/benefits to which he otherwise was entitled.

15. In June of 2005 Plaintiff applied for a "Michaelian Scholarship" in connection with which Alesio, with Indelicato's approval, provided a false, negative evaluation of him which *inter alia* referenced his military service. Plaintiff was denied the Scholarship.

16. In June 2006 Plaintiff again applied for the Michaelian Scholarship in connection with which Alesio, with Indelicato's approval, provided verbatim the same

false, negative evaluation of him including the reference to military service. Plaintiff was again denied the Scholarship.

17. In June 2007 Plaintiff once again applied for a Michaelian Scholarship. On this occasion Alesio with the approval of Indelicato reiterated verbatim the same false, negative evaluation of him including reference to military service. Plaintiff on this occasion was granted the Scholarship.

*Hostile Work Environment*

18. On April 6, 2001, Plaintiff expressed concern to Indelicato regarding the pervasive, gender-hostile work environment to which he was daily subjected. In response Indelicato advised him: "When that happens, you don't complaint, you just leave. Michael, you just leave".

19. In December 2005 Associate County Attorney Melissa Benjamin brought her infant daughter to the office. When she observed her daughter looking at Plaintiff she picked her up advising Plaintiff: "Come on honey, we don't need him", "We don't need that guy, do we".

20. Hillary Raimondi, in her office with the door wide open, changed her clothes and put on a horse riding outfit, displaying an open "fly" to Plaintiff as she tucked in a shirt as if she were alone in a women's locker room.

6

*Degrading Work Assignments and Disparate Treatment*

21. Throughout Plaintiff's tenure Indelicato, Alesio, Raimondi, and Arcuri have personally enforced a gender-discriminatory office policy, practice and/or custom pursuant to which:

i) A female administrator (Stephanie Fox) bragged to Plaintiff that a male predecessor was targeted for disparate treatment by reason of which "we [the girls in the Office] ran him all over town until he quit",

ii) Male attorney Richard Harris was harassed due to his gender by Melissa Benjamin until he was forced to resign,

iii) A male paralegal was forced to resign after being publicly berated by a female paralegal - - with respect to whom nothing was done by way of remedial action,

iv) A second male paralegal was forced to take a transfer by reason of the same female paralegal's gender-discriminatory public degradation,

v) At the Law Department's 2005 picnic when Plaintiff waived to Indelicato as she drove by him, Indelicato waived him off disparagingly and clearly mouthed the word: "Asshole",

vi) In August 2006 Arcuri publicly screamed at, demeaned and berated Plaintiff - - in the presence of his then female officemate - - with the office door wide open. That criticism, as leveled by Arcuri, was based upon false assertions of fact by her.

vii) In September 2006 Arcuri loudly, publicly, and falsely accused Plaintiff of making an error in a "poor persons" application. In fact there was no error.

7

viii) In September 2006 Alesio and Raimondi ordered totally unnecessary close supervision of Plaintiff - - as if he were a newly admitted attorney - - in order to degrade and publicly humiliate him,

ix) Plaintiff like other male subordinate attorneys (including Robert Villani, Eric Rotfeld, George Mancuso and Richard Harris), but not his lesser qualified female counterparts, was assigned demeaning collection work and trivial work pertaining to solid waste license application "depositions" for long periods of time, assignments known intra-office as a career "dead end",

x) Plaintiff, unlike his lesser qualified female counterparts, has throughout his tenure been purposely denied assignment to any cases in Federal Court because such assignments are accurately perceived intra-office to be the means to upward mobility and promotional opportunities in the County Attorney's Office and elsewhere,

xi) Plaintiff has throughout his tenure been purposely assigned to handle a large number of pistol permit revocations and to respond to requests made by inmates to the County's Department of Probation - - which Department Indelicato has publicly announced her office does represent - - for copies of their pre-sentence reports, an assignment which is superfluous and pointless since the Westchester County District Attorney's Office processes the same requests,

xii) Plaintiff, like the other male employees in the County Attorney's Office, are prohibited from speaking directly with Indelicato - - a prohibition not applicable to her female subordinates,

xiii) Male employees are routinely subjected to disparate disciplinary treatment, a circumstance by which males are terminated for errors which, when

8

committed by their lesser qualified female counterparts only result in intra-office transfers,

xiv) Male staff including James Robertson, are publicly degraded due to their gender by Indelicato, who has screamed so loudly at them in the presence of subordinate staff that she could be heard through the walls of several offices,

xv) A male Assistant County Attorney, John Vorperian, who is extremely well-qualified with respect to *inter alia* child support matters, has been assigned to work subordinate to a lesser qualified female,

xvi) A male Deputy Assistant County Attorney (Michael Barrett), assigned to the Family Court Bureau, was coerced to quit by reason of his gender in order to be replaced by a lesser qualified female attorney with absolutely no Family Court experience,

xvii) On the basis of calculatedly false job performance evaluations Plaintiff has been denied salary increments by reason of his gender and military service - - which increments he subsequently obtained through a grievance process,

xviii) By reason of Plaintiff's military service and gender he, unlike his lesser qualified female counterparts, has been deliberately given an overload of work assignments intended to prevent him from timely completing projects - - a circumstance that routinely leads to publicly degrading criticism of him by reason of his gender,

xix) A male attorney (Michael Barrett) was, by reason of his gender, forced out of his employment in the County Attorney's Office by Kit Covell and thereafter pursuant to the gender-premised directive of Alesio put on a "Dangerous

Persons List" in order to prevent him from entering the County Office Building for any purpose, and, *inter alia*,

xx. Another male attorney was deliberately overloaded with work assignments by reason of his gender, as contrasted with his lesser qualified female counterparts, so as to force him to resign.

*Gross Statistical Imbalances*

22. During Plaintiff's tenure and due to Indelicato's gender discriminatory policies the number of female supervisors has been nearly triple the number of male supervisors, despite the fact that many of the female supervisors are lesser qualified than their male counterparts.

23. During Plaintiff's tenure and due to Indelicato's gender discriminatory practices as carried out by her female co-defendants the number of lesser qualified female attorneys employed by Indelicato grossly exceeds the number of male attorneys so employed.

24. During Plaintiff's tenure and due to Indelicato's gender discriminatory policy as carried out by her female co-defendants, lesser qualified female attorneys have consistently been promoted through the ranks more quickly than their better qualified male counterparts.

25. During Plaintiff's tenure, and by reason of Indelicato's gender discriminatory animus as carried out by her female co-defendants, lesser qualified female attorneys have consistently been given more substantive, challenging work assignments than their better qualified male counterparts.

26. As to the few male supervisors (such as John Fico, a Senior Assistant County Attorney who is required to supervise other Senior Assistant County Attorneys), they are paid less and given a title subordinate to their lesser qualified female counterparts even though the work required of the males is equal to that of the females.

27. As a proximate result of Defendants' conduct Plaintiff has been forced to endure: a hostile workplace by reason of his gender; a denial of equal terms and conditions of employment by reason of his gender; a denial of favorable terms and conditions of employment by reason of his military service and obligations; a denial of Equal Protection by reason of his gender; a denial of his rights as guaranteed by Title VII; a denial of his rights as guaranteed by the Fourteenth Amendment; a denial of his rights as guaranteed by USERRA; public embarrassment; public humiliation; shame; emotional upset; anxiety; public degradation; impairment of his professional career advancement opportunities; a deliberate stifling of his ability to develop new skills and advocacy qualities; and he has been otherwise rendered sick and sore.

## AS AND FOR A FIRST CLAIM

28. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "27", inclusive.

29. Defendants' conduct violated Plaintiff's rights as guaranteed by the Uniform Services Employment and Reemployment Act, 38 U.S.C. §4301 *et. seq.*

11

## AS AND FOR A SECOND CLAIM

30. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "27", inclusive.

31. Defendants' disparate treatment of Plaintiff by reason of his gender violated his rights as guaranteed by Title VII, 42 U.S.C. §2000e *et. seq.*

## AS AND FOR A THIRD CLAIM

32. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "27", inclusive.

33. Defendants disparate treatment of Plaintiff by reason of his gender violated his rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM

34. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "27", inclusive.

35. Defendant County's disparate treatment of Plaintiff as his employer and the disparate treatment accorded Plaintiff by the individually named Defendants acting as aiders and abettors, violated Plaintiff's rights as guaranteed by Section 296 *et. seq* of the New York State Executive Law.

WHEREFORE a judgment is respectfully demanded:

    a. Awarding against the individually named Defendants such punitive damages as the jury shall impose,

    b. Awarding against all Defendants such compensatory damages as the jury may determine,

    c. Awarding in accordance with USERRA, liquidated and/or related damages,

    d. Awarding against all Defendants reasonable attorney's fees and costs, and,

    e. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       February 21, 2009

*[signature]*
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401